O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ANGELICA M. TORRES HERNANDEZ DE RAMIREZ, | Case No. ED CV 16-02035-DFM |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

    Angelica M. Torres Hernandez de Ramirez ("Plaintiff") appeals from the Social Security Commissioner's final decision denying her application for Social Security Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

///

///

---

    [1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as defendant under Federal Rule of Civil Procedure 25(d).

## I.

## BACKGROUND

Plaintiff filed an application for DIB on August 22, 2012, alleging disability beginning August 6, 2010. <u>See</u> Administrative Record ("AR") 164-65. After her application was denied, both initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). <u>See</u> AR 84-100. A hearing was held on April 6, 2015, at which Plaintiff, who was represented by a non-attorney, testified with the assistance of an interpreter. <u>See</u> AR 30-56. The ALJ also called a vocational expert ("VE") to testify about Plaintiff's past relevant work. <u>See</u> <u>id.</u>

In a written decision issued on April 16, 2015, the ALJ denied Plaintiff's claim for benefits. <u>See</u> AR 11-29. In reaching his decision, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, impingement syndrome of the right shoulder, lateral epicondylitis of the left elbow, and bilateral carpal tunnel syndrome. <u>See</u> AR 16. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with certain additional limitations. <u>See</u> AR 18. Based on the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a sewing machine operator and hand assembler as generally performed. <u>See</u> AR 23-24. The ALJ therefore concluded that Plaintiff was not disabled from August 6, 2010. <u>See</u> AR 24. Plaintiff requested review of the ALJ's decision. <u>See</u> AR 7-10. On July 29, 2016, the Appeals Council denied review. <u>See</u> AR 1-5. This action followed.

## II.

## DISCUSSION

The parties dispute whether the ALJ erred in (1) discounting the opinions of Plaintiff's treating and examining physicians, (2) discrediting Plaintiff's testimony, and (3) determining that Plaintiff could perform her past

work as generally performed. <u>See</u> Joint Stipulation ("JS") at 3.

**A.  Physician Testimony**

**1.  Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. <u>See</u> 20 C.F.R. § 404.1527(c)[2]; <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. <u>See</u> <u>Lester</u>, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." <u>See</u> <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing <u>Lester</u>, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. <u>Id.</u>; <u>see also</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>accord</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. <u>See</u> 20 C.F.R. § 404.1527(c).

---

[2] The Court applies the regulations that were in effect at the time of the ALJ's decision. <u>See</u> <u>Rose v. Berryhill</u>, 256 F. Supp. 3d 1079, 1083 n.3 (C.D. Cal. 2017).

## 2.    Relevant Facts

### a.    Dr. Hafezi, Treating Physician

Dr. Hafezi treated Plaintiff from November 2010 through June 2012 during her workers' compensation claim. <u>See</u> AR 230-304. During treatment, he determined that "she cannot work ever again" at the same time as describing her as "totally unreliable on examination." <u>See</u> AR 235-36. Dr. Hafezi ordered MRI scans at various times, which produced generally unremarkable findings with some tendonitis. <u>See, e.g.</u>, AR 245, 254-57, 274, 276, 282, 288. Other tests also came back negative. <u>See, e.g.</u>, AR 278-79, 284. Similarly, injections to the left elbow relieved pain and restored full range of motion and strength by July 2011. <u>See</u> AR 265.

In giving no weight to Dr. Hafezi's opinion, the ALJ emphasized that his notes indicated "evidence of 'severe' magnifying symptomology and the claimant was not putting forth her best effort on physical examinations." AR 21. He also noted that Plaintiff refused additional injections on her left elbow and right bicep despite Dr. Hafezi's recommendations. <u>See</u> <u>id.</u>; <u>see also</u> AR 250. The ALJ considered Dr. Hafezi's suggestion that Plaintiff should remain off work and his statements that Plaintiff could perform modified work. <u>See</u> AR 22. However, he rejected the conclusions as having no probative value because they were opinions on an issue reserved to the Commissioner and because the workers' compensation context of examinations affected the credibility and relevance of his opinions. <u>See</u> AR 22-23. Moreover, the ALJ noted that the opinions were inconsistent with the objective evidence as a whole, such as the mild MRI findings. <u>See</u> AR 23.

### b.    Dr. Sargeant, Examining State-Agency Physician

Dr. Sargeant examined Plaintiff on December 15, 2012, without the benefit of medical records available to review. <u>See</u> AR 305. His examination revealed: normal shoulders, wrists, and right hand; a tender left elbow that

could be fully extended and flexed; and full strength overall except a slightly weak left hand grip. See AR 307-08. Dr. Sargeant noted that Plaintiff could have difficulty using her left hand with gross manipulation. See AR 309. He assessed Plaintiff with tendonitis and limited her to: lifting and carrying 20 pounds occasionally and 10 pounds frequently; pushing and pulling occasionally; walking, standing, and sitting without limitations; and climbing, balancing, kneeling, and crawling frequently. See id. The ALJ assigned "some weight" to the opinion, noting that the evidence reflects "only mild carpal tunnel syndrome" and no treating or examining doctor recommended surgery. AR 21, 23.

### c.    Dr. Grogan, Examining Physician

Dr. Grogan examined Plaintiff on February 8, 2013. See AR 310. He found a full range of motion in her upper extremities except some right shoulder limitations; full motor skills; left elbow and cervical spine pain; and unremarkable x-rays. See AR 310-11. Despite normal findings through objective tests, Dr. Grogan determined that Plaintiff could not return to her work as a seamstress. See AR 311. Dr. Grogan assessed minor limitations in the total amount of time that Plaintiff could sit, stand, or walk at work, and limited her to: lifting and carrying up to 5 pounds frequently and up to 10 pounds occasionally; simple grasping and fine manipulation of both hands; no pushing and pulling of arm controls; occasional bending, squatting, crawling, and climbing; and frequent reaching. See AR 403. The ALJ noted that Dr. Grogan's orthopedic examination revealed "full range of motion" except right shoulder abduction, full motors strength in all muscle groups, normal grip strength on the right, and reduced grip strength on the left. AR 22.

### d.    Dr. Moazzas, Examining Physician

Dr. Moazzaz examined Plaintiff on October 19, 2013. See AR 325. He found that Plaintiff had the following limitations: poor grip strength in both

hands, limited neck rotation and bending, left elbow pain when touched, and diminished sensation in the upper extremities. See AR 326-28. Dr. Moazzaz noted that Plaintiff's "subjective complaints are out of proportion to the objective findings," and that she exerted "poor effort" during examination. AR 325, 329. He determined that she could lift and carry 50 pounds occasionally and 25 pounds frequently; stand, walk, and sit for 8 hours in an 8-hour workday; bend, kneel, steep, crawl, and crouch frequently; perform overhead activities frequently; and fully use her hands for fine and gross manipulative movements. See AR 329-30. The ALJ assigned "little weight" to his opinion that Plaintiff could perform medium exertional work because he had not reviewed Plaintiff's entire medical record, his opinion was "too generous in light of the objective medical findings," and he "did not adequately consider the claimant's subjective complaints." AR 23.

### e. Drs. Youssef and Simpson

Dr. Youssef conducted Plaintiff's workers' compensation evaluations throughout 2014, treating her neck, left shoulder, and left elbow pain. See AR 334-95. He noted tenderness and a reduced range of motion in Plaintiff's cervical spine, shoulder, and left elbow. See AR 353-54. He conducted tests on Plaintiff's left elbow, which were positive for tennis elbow and carpal tunnel syndrome. See AR 391. Dr. Youssef prescribed physical therapy, steroid injections, and pain medication. See AR 355.

Dr. Simpson conducted workers' compensation evaluations in 2014 and 2015. See AR 396-411. Dr. Simpson conducted a workers' compensation evaluation on February 28, 2015, following up on Plaintiff's shoulder, neck, and left elbow pain. See AR 405. He noted tender shoulder joints and a slightly reduced range of motion in the shoulders; swelling and tenderness in the left elbow and a somewhat reduced range of motion. See AR 405-06. He recommended topical treatment for pain. See AR 409.

6

f.    Non-Examining State-Agency Physicians

Dr. Kalmar reviewed Plaintiff's medical records and found severe osteoarthrosis and allied disorders, but also found that Plaintiff's statements about intensity and functional limits were unsubstantiated by the objective medical evidence. See AR 63. Dr. Friedman reviewed Plaintiff's records on reconsideration and determined that Plaintiff's dysfunction of the major joints created some functional limitations but found Plaintiff's symptoms only partially credible. See AR 69-80.

The ALJ gave "great weight" to their opinions because they "are supported by the evidence in its entirety, including the objective clinical and diagnostic medical findings and the claimant's activities of daily living. Further, diagnostic imaging showed an improvement of the claimant's osteoarthritis." AR 23.

**3.    Analysis**

Plaintiff argues that the ALJ improperly assessed and discounted treating and examining physician opinions in favor of non-examining physician opinions. See JS at 20.

a.    Treating Physicians

Plaintiff argues that the ALJ erred in discrediting Dr. Hafezi's notation on March 3, 2012, that Plaintiff's symptoms had worsened. See JS at 21. However, he also wrote that "[e]xamination of this patient is totally unreliable" on the same date. See AR 242. The ALJ validly relied on the specific and legitimate reason that Dr. Hafezi could not trust Plaintiff's testimony while assessing her claim. Without being able to rely on Plaintiff's reactions during examination, Dr. Hafezi's conclusion that Plaintiff could never work again despite negative MRIs and tests was based solely on non-credible testimony. Dr. Hafezi failed to give any subjective or objective reasons for his conclusions. The ALJ thus legitimately discounted his opinion.

Additionally, the ALJ properly rejected Dr. Hafezi's broad conclusion that Plaintiff was disabled. His opinion that Plaintiff would be unable to work was a determination on an issue—Plaintiff's RFC—that is reserved for the Commissioner. See 20 C.F.R. § 404.1527(d)(1)-(2); Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *2 (July 2, 1996).

Plaintiff also argues that the ALJ erred when he did not address the opinions of treating physicians Drs. Youseff and Simpson. See JS at 25. Indeed, the ALJ failed to discuss their opinions or explain why they did not support the objective medical findings. Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. See Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996); see also Garrison, 759 F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."); Battle v. Astrue, No. 11-829, 2012 WL 985710, at *7 (S.D. Cal. 2012) ("[T]he ALJ . . . did not address the opinion of [the] treating physician . . . or explain what, if any, weight, was afforded to it in light of the record as a whole."). Accordingly, the ALJ erred when silently disregarding Drs. Youssef and Simpson's opinions.

b.    Examining Physicians

Plaintiff argues that the ALJ improperly rejected Dr. Sargeant's opinion that Plaintiff "may have some difficulty using the left hand with gross manipulation, especially that which requires pronation and supination." See JS at 28 (citing AR 309). The ALJ attributed some weight to his opinion but noted that the medical record supported only mild carpal tunnel syndrome. See AR 21, 23. Despite assigning only some weight, the ALJ and Dr. Sargeant assigned very similar functional limitations. The ALJ differed only by

assigning greater functional limitations such that any errors accrued to Plaintiff's benefit. Moreover, the ALJ gave a specific and legitimate reason for discounting his opinion—that it conflicted with the objective medical record.

Plaintiff argues that the ALJ also failed to account for Dr. Grogan's examinations. See JS at 26-27. She alleges that the ALJ did not specifically refer to Dr. Grogan by name and mistakenly stated that he had examined Plaintiff as part of her workers' compensation claim. See JS at 27 (citing AR 22-23). Plaintiff's points are without merit. While the ALJ did not refer to Dr. Grogan by name, he clearly and specifically addressed his February 2013 physical examination, noting his findings of full motor strength in all muscle groups, reduced grip strength on the left hand, and unremarkable x-rays. See AR 22. He did not, however, assign a particular weight to Dr. Grogan's opinion and did not account for Dr. Grogan's hand manipulation limitations. As with Drs. Youseff and Simpson, the ALJ erred by silently disregarding Dr. Grogan's hand manipulation limitations. See Nguyen, 100 F.3d at 1464; Garrison, 759 F.3d at 1012-13; Battle, 2012 WL 985710, at *7.

The ALJ gave specific, legitimate reasons based on substantial evidence for rejecting the opinions of Drs. Hafezi and Sargeant based in part on the opinions of the two non-examining physicians. See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995); Magallanes v. Bowen, 881 F.2d 747, 752-53 (9th Cir. 1989). While a non-examining physician opinion alone does not constitute substantial evidence that justifies rejecting the treating and examining physicians' opinions, see Lester, 81 F.3d at 831, the ALJ also relied on (1) Dr. Hafezi's determination that Plaintiff had severely exaggerated her symptoms, (2) Plaintiff's refusal to follow Dr. Hafezi's proposed treatment of pain injections to the left elbow and right arm, (3) the relatively mild objective medical findings through MRIs and x-rays, (4) a history of exaggerating symptoms, and (5) a record of "routine, conservative, and non-emergency

treatment." See AR 21-23. However, the ALJ erred when failing to address the opinions of Drs. Simpson, Youseff, and Grogan.

**B.   Credibility of Plaintiff's Testimony**

###   1.   Relevant Facts

The ALJ found Plaintiff's subjective complaints less than fully credible because the objective medical evidence did not support the alleged severity of symptoms. See AR 23. He noted that the diagnostic evidence reflected mild carpal tunnel syndrome and no muscle atrophy or abnormal reflexes. See id. Additionally, the ALJ considered that both Dr. Hafezi and Dr. Moazzaz believed that Plaintiff had exaggerated her symptoms. See id. Finally, he considered that Plaintiff described herself as suffering from totally disabling functional limitations, yet she performed activities of daily living. See id. Thus, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not credible to the extent that they were inconsistent with the ALJ's residual functional capacity assessment. See id.

###   2.   Applicable Law

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2006)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. See Lingenfelter, 504 F.3d at 1036 (citation omitted). "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)

(en banc) (citation omitted). To the extent that an individual's claims of functional limitations and restrictions due to alleged symptoms are reasonably consistent with the objective medical evidence and other evidence, the claimant's allegations will be credited. See SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (explaining 20 C.F.R. § 404.1529(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citing Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (quoting Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. See Smolen, 80 F.3d at 1284.

### 3.  Analysis

Plaintiff contends that the ALJ erred in discrediting Plaintiff's testimony. See JS at 38. She argues that the objective medical evidence corroborated her testimony, that Dr. Hafezi likely accounted for his suspicion that Plaintiff was exaggerating her symptoms, and that activities of daily living are not a clear and convincing reason for discounting Plaintiff testimony. See JS at 38-40.

First, after a thorough review of Plaintiff's medical record, the ALJ

11

concluded that the record did not support limitations greater than those he imposed in his RFC finding. <u>See</u> AR 18. In so ruling, he correctly considered that objective testing did not corroborate Plaintiff's symptom testimony. For example, an MRI of the left elbow was unremarkable, <u>see</u> AR 220, and spine testing revealed only minimal disc bulging, <u>see</u> AR 227. Further, an electrodiagnostic study uncovered only mild carpal tunnel syndrome, <u>see</u> AR 228, which the ALJ properly incorporated into his opinion, <u>see</u> AR 16. The ALJ's finding that the record lacked objective medical evidence was a proper basis for discounting Plaintiff's symptom testimony. <u>See</u> <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1166 (9th Cir. 2001) (holding that ALJ permissibly discredited claimant's subjective complaints where objective evidence did not corroborate severity of alleged symptoms). And while an ALJ may not discredit pain testimony merely because the reported degree of pain is unsupported by objective medical findings, the ALJ provided additional valid reasons for discounting Plaintiff's complaints of disabling pain, including the conservative treatments prescribed and Plaintiff's recorded symptom exaggeration. <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Second, as another reason for discounting Plaintiff's symptom testimony, the ALJ cited the "evidence strongly suggesting that [Plaintiff] exaggerated symptoms and limitations," specifically addressing Dr. Hafezi opining that there was "evidence of severe magnifying of symptomology" and Dr. Moazzaz's opinion that Plaintiff's "subjective complaints were out of proportion to the objective findings." AR 20. An ALJ may consider evidence that a plaintiff is exaggerating symptoms when making a credibility determination. <u>See</u> <u>Williamson v. Comm'r of Soc. Sec.</u>, 438 F. App'x 609, 611 (9th Cir. 2011) (holding that ALJ properly discounted claimant's testimony

based on doctor's observation that there was reason to suspect that claimant had exaggerated symptoms). And while Plaintiff argues that the ALJ erred in considering the physicians' suspicions of symptom magnification, she cites no relevant authority for this claim or facts supporting such an assumption. See JS at 40-41; see also Tonapetyan, 242 F.3d at 1149 (holding that ALJ that properly discounted claimant's credibility was "free to disregard" doctor's opinion premised on claimant's subjective complaints).

Third, the ALJ considered that despite her "allegations of totally disabling functional limitations," Plaintiff could dust, make her bed, cook, shop, go for a walk, and watch television. See AR 20. Moreover, the ALJ noted that Plaintiff "relayed a higher level of daily activities at the psychiatric evaluation." Id. While it is true that "[o]ne does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)), the extent of Plaintiff's activities support the ALJ's finding that Plaintiff's reports of the severity of her impairments were not fully credible. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that ALJ may weigh inconsistencies between claimant's testimony and daily activities); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1991) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries[] . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity").

On appellate review, the Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility, which the ALJ did in this case. See Smolen, 80 F.3d at 1284. It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence. See Magallanes, 881 F.2d at

13

750. If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959; Fair, 885 F.2d at 604. It was reasonable for the ALJ to rely on all of the reasons stated above, each of which is supported by substantial evidence, in rejecting Plaintiff's subjective complaints. Reversal is therefore not warranted on this basis.

**C.   Language Skills**

   **1.   Applicable Law**

   The ALJ determined that Plaintiff could perform her past relevant work as a sewing-machine operator or hand assembler at step four of the Social Security Administration's five-step disability determination process. At step four, the claimant has the burden of showing that she can no longer perform her past relevant work. See Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(e)). "The claimant has the burden of proving an inability to return to [her] former type of work and not just to [her] former job." Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) (emphasis omitted). Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. See SSR 82-62, 1982 WL 31386, at *4 (Jan. 1, 1982). This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. See Pinto, 249 F.3d at 844-45; accord 20 C.F.R. § 404.1520(f). If the ALJ determines that the claimant can perform the functional demands and duties of her past relevant work either as she actually performed it or as it is generally performed in the national economy, then the claimant is not disabled. See Pinto, 249 F.3d at 845; 20 C.F.R. § 404.1520(f).

   The Dictionary of Occupational Titles ("DOT") is the best source of information about how a job is generally performed. See Carmickle, 533 F.3d

14

at 1166; see also 20 C.F.R. § 404.1566(d)(1) (noting that Social Security Administration takes administrative notice of DOT). To rely on a VE's testimony regarding the requirements of a particular job, an ALJ must first inquire as to whether the testimony conflicts with the DOT. See Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p, 2000 WL 1898704, *4 (Dec. 4, 2000)). When such a conflict exists, the ALJ may accept VE testimony that contradicts the DOT only if the record contains "persuasive evidence to support the deviation." Pinto, 249 F.3d at 846 (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).

### 2. Relevant Facts

Plaintiff worked as a sewing machine operator and hand assembler of leather products for four to five years. See AR 24, 44. During the hearing, the ALJ asked Plaintiff how she performed such work "if you didn't read English." AR 44. Plaintiff responded that "[t]here's a lot of people there that spoke Spanish, and I was just assembling with the pliers." Id. She confirmed that "others would tell her what to do in Spanish," and she "didn't have to read any instructions in English." Id. The ALJ then gave the VE a series of hypotheticals based on what the ALJ determined was Plaintiff's RFC, as well as additionally asking the VE to "assume a 46 ½ year-old individual that does not speak English well, does not read English, no schooling in the United States." AR 49. In response, the VE testified that such a hypothetical person could perform Plaintiff's past relevant work as generally performed, but not as actually performed because Plaintiff described lifting 30 pounds. See AR 50 ("So not as actually performed, but as generally performed, yes is the answer.").

In his decision, the ALJ relied on the VE's testimony in concluding that Plaintiff was not disabled because she could perform her past relevant work as generally performed as a sewing machine operator or hand assembler:

The testimony of the [VE] is consistent with the DOT, and the undersigned accepts it. In comparing the claimant's [RFC] with the physical and mental demands of the claimant's past relevant work, the undersigned has determined the claimant is able to perform this past relevant work as generally performed in the regional and national economy.

AR 24.

### 3.    Analysis

The DOT provides that a sewing machine operator requires Level 1 language skills. See DOT 783.682-014, 1991 WL 680926. A person with Level 1 language proficiency can has the following characteristics:

READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.

WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.

SPEAKING: Speak simple sentences, using normal word order, and present and past tenses.

Id. The DOT provides that a hand assembler of leather goods requires Level 2 language skills. See DOT 783.687-010, 1991 WL 680938. A person with Level 2 language proficiency has the following characteristics:

READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.

WRITING: Write compound and complex sentences, using cursive

16

style, proper end punc[t]uation, and employing adjectives and adverbs.

SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct punc[t]uation, variations in word order, using present, perfect, and future tenses.

Id.

Here, the ALJ made no explicit findings of fact regarding Plaintiff's language skills. But he questioned Plaintiff about her education and language skills at the hearing, at which point he learned that she could speak a "little bit" of English, had no schooling in the United States, and had received six years of education in Mexico. See AR 33-34, 44. Plaintiff also testified with the assistance of a Spanish language interpreter. See AR 32-33. The VE was present for Plaintiff's testimony. See AR 32. The ALJ's hypotheticals to the VE specifically addressed Plaintiff's inability to read or speak English and her lack of schooling within the United States. See AR 49. Based on the foregoing, the VE's testimony that a person with Plaintiff's educational background[3] could perform the job of sewing machine operator or hand assembler conflicted with the DOT because those jobs involve Level 1 and 2 language skills. See DOT 783.682-014, DOT 783.687-010. This conflict required an explanation.

In Pinto, the Ninth Circuit found that an ALJ erred where he noted the claimant's inability to speak English in both his findings of fact and hypothetical to the VE but he "failed to explain how this limitation related to his finding that [the claimant] could perform her past relevant work as generally performed." 249 F.3d at 847. The Ninth Circuit held that "in order for an ALJ to rely on a job description in the Dictionary of Occupational Titles

---

[3] "Since the ability to speak, read and understand English is generally learned or increased at school, [the Social Security Administration] may consider this an educational factor." 20 C.F.R. § 404.1564(b)(5).

that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." Id.

Likewise, in Aranda v. Astrue, the ALJ found, based on the VE's testimony, that the plaintiff was able to perform her past relevant work as a sewing-machine operator as generally, but not actually, performed, despite having only "completed third grade in Mexico and 40 hours of English as a second language." No. 12-3639, 2013 WL 663571, at *2 (C.D. Cal. Feb. 22, 2013). The court found an apparent inconsistency between the VE's testimony and the DOT due to the plaintiff's "marginal" education. Id. Because the VE and ALJ did not explain the deviation from the DOT, the court remanded the action "for clarification as to how [the plaintiff's] language skills factor[ed] into her disability determination." Id. at *3.

Here, Plaintiff's sixth-grade education would also be considered "marginal." See 20 C.F.R. § 404.1564(b)(2) ("Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education."). Moreover, the VE offered no explanation for the deviation from the DOT. While the ALJ "determined that the testimony provided by the vocational expert is consistent with the information contained in the DOT," he failed to discuss this apparent conflict. AR 24.

The Commissioner argues that substantial evidence nevertheless supports the ALJ's finding that Plaintiff could do her past relevant work as generally performed because "Plaintiff has worked for many years as both a sewing machine operator and as a hand assembler, which, as Plaintiff notes, is a Language Level Two occupation." JS at 15. Courts have routinely rejected similar arguments. See, e.g., Mora v. Astrue, No. 07-1527, 2008 WL 5076450, at *4 (C.D. Cal. Dec. 1, 2008) (finding that Commissioner's "conclusory

statement" that plaintiff had worked as hotel maid in past showed that she could perform similar job despite illiteracy "is not persuasive evidence to support a deviation from a DOT requirement"); see also Obeso v. Colvin, No. 15-00151, 2015 WL 10692651, at *16 (E.D. Cal. Apr. 20, 2015) ("The Ninth Circuit . . . has already resoundingly rejected the argument that a claimant's previous[] performance of work requiring a higher language level somehow excused the ALJ from explaining how the claimant's language limitations would impact her ability to find and perform a similar job or the requirements of the jobs identified by the VE.").

Plaintiff's limited ability to speak, read, or write English does not by itself make her disabled. See Pinto, 249 F.3d at 847 ("A claimant is not per se disabled if he or she is illiterate."). Indeed, Plaintiff's past relevant work is a testament to her employability despite her limited ability in English. See Donahue v. Barnhart, 279 F.3d 441, 445-46 (7th Cir. 2002) (rejecting per se rule that illiteracy rendered plaintiff disabled and noting that he "had a job for a long time despite his poor reading skills"); Landeros v. Astrue, No. 11-7156, 2012 WL 2700384, at *5 (C.D. Cal. July 6, 2012) (noting that finding plaintiff was per se disabled because of her inability to speak English would be "illogical" and "belied by [p]laintiff's former gainful employment as a factory helper"). That said, "[i]lliteracy seriously impacts an individual's ability to perform work-related functions such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision." Pinto, 249 F.3d at 846. More importantly, where an ALJ relies on a job description in the DOT that fails to comport with the claimant's noted limitations, the ALJ must offer an explanation for the deviation. See id. at 847. Remand is therefore warranted on this ground.

**D.  Remand for Further Proceedings Is Appropriate**

The decision whether to remand for further proceedings is within this

Court's discretion. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003); see also Garrison, 759 F.3d at 1021 (explaining that courts have "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). Here, remand is appropriate for the ALJ to fully and properly assess how Drs. Youseff's, Simpson's, and Grogan's medical opinions and Plaintiff's language skills factor into his disability determination.[4] See Aranda, 2013 WL 663571 at *3.

///
///
///
///
///
///

---

[4] The Court makes no finding as to whether Plaintiff possesses the language skills to perform her past relevant work.

### III.

### CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings.

Dated: April 17, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge